UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DAVID BURGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 2:07-CV-0336 PS |
| | ) | |
| DAVID R. MURTAUGH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

David Burge filed a complaint pursuant to 42 U.S.C. § 1983 [DE1], alleging that Porter County Jail officials and United States Marshal David Murtaugh violated his federally protected rights while he has been confined at the Porter County Jail as a Federal pretrial detainee. Pursuant to 28 U.S.C. § 1915A(a), the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

The pleading standards were recently retooled by the Supreme Court. In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (quotation marks and brackets omitted). Instead the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the

speculative level." *Id*. at 1965.  Two weeks later the Supreme Court decided *Erickson v. Pardus*, 127 S.Ct. 2197 (2007).  In *Erickson* the Court also took up the issue of pleading standards, but this time in the context of *pro se* litigation.  In *Erickson*, the Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a).  *Id*. at 2200.  The Court further noted that a "document filed *pro se* is to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Id*. (quotation marks and citations omitted).  In an effort to reconcile *Twombly* and *Erickson* the Seventh Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  *Airborne Beepers & Video, Inc. v. AT&T Mobility*, 499 F.3d 663, 667 (7th Cir. 2007).

  Burge brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law.  *Bell v. City of Milwaukee*, 746 F.2d 1205, 1232 (7th Cir. 1984), *rev'd on other grounds Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).  To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States.

  In issues one, two, and three of his Statement of Claim, Burge raises privacy claims arising from the jail's surveillance of inmates by means of security cameras.  In his first claim, Burge states that the jail has cameras inside the cells in the intake area of the jail where inmates

are housed for the first few days after their arrival at the jail.  His second claim deals with cameras monitoring the shower area.  He states that the shower itself is screened but that the area in front of the shower "allows cameras to record and view nude inmates while they are in any of the three shower stalls and while they are at the drying off area." (Statement of Claim at pp. 2-3.)  In his third claim, Burge alleges that there are cameras in the pod where he is currently confined that allow officers to record and view anyone seated on the pod's two toilets.  Burge's allegations that the jail's surveillance policies and practices violated his right to privacy, however, state no claim upon which relief can be granted.  In weighing the privacy interests of an inmate against the legitimate security concerns of the jailer, the privacy interests of the inmate almost always must yield.  As the Seventh Circuit has stated:

> A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. . . .  We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals. . . .  A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.  We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.  We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

*Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) (citations, quotation marks, and brackets omitted).

On the specific issue of whether female guards can monitor male inmates – even when they are in the shower or on the toilet – the Seventh Circuit has specifically held that they can.  That the jail may assign female officers to watch the security camera monitoring his cell or monitoring the shower and restroom facilities also does not violate any right to privacy.

Guards take control of where and how prisoners live; they do not retain any right

> of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After [*Bell v. Wolfish*, 441 U.S. 520 (1979)] and *Hudson*, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
>
> * * *
>
> Surveillance of prisoners is essential, as *Wolfish* establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections *Wolfish* held permissible. Guards do the surveillance. Male guards and female guards too. . . .
>
> * * *
>
> [F]emale guards . . . see male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995). Accordingly, Burge can receive no relief on either of his first three claims.

In issue four of his Statement of Claim, Burge alleges that jail officials violated the Fourteenth Amendment's equal protection clause because female officers and nurses have access to male housing areas, but male custody staff do not directly supervise female inmates. He alleges that this practice discriminates against male inmates because female inmates "are provided a measure of dignity" that is denied to male inmates. (Statement of Claim at p. 9.) However, as was just mentioned, assigning female officers to monitor male pretrial detainees while not assigning male officers to monitor female prisoners does not violate the equal protection clause. In *Johnson*, the plaintiff alleged, as does Burge, that jail officials violated the Fourteenth Amendment's equal protection clause by allowing female guards to monitor male pretrial detainees' movement and see them naked in their cells, shower, and toilet, while not subjecting female prisoners to the same indignities. The Seventh Circuit held that the district court "properly rejected Johnson's argument that different monitoring patterns in different cellblocks within the Jail violate the equal protection clause of the fourteenth amendment." 69 F.3d at 145.

4

Burge next submits a series of claims seeking damages for conditions of confinement at the Porter County Jail. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments. *See Bell v. Wolfish*, 441 U.S. at 535 n. 16. The rights of pre-trial detainees are derived from the Fourteenth Amendment's due process clause. *See id.* But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988). A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

> In *Martin*, a pretrial detainee protested jail conditions. The court observed that
>
> > the conditions at the Marshall County Jail may be far from ideal. But again, the Marshall County Jail is a small, rural jail, and jails do not have to duplicate the amenities of small, rural hotels. In order to make out a claim under 42 U.S.C. § 1983, Martin must show that intentional actions of the defendants served to deprive him of a constitutional right. . . . He has not been Constitutionally harmed here.

845 F.2d at 1457 (citations omitted).

With this background in mind, I will now address the specifics of Burge's claims relating to the conditions of his confinement. In issue five of his Statement of Claim, Burge alleges that prisoners are issued one uniform to wear for a week. But providing one uniform a week does not deprive the prisoner of the minimal civilized measure of life's necessities, and Burge does not allege that he suffered any actual harm from this practice.

In issue six of his Statement of Claim, Burge alleges that the jail does not provide

5

indigent inmates with underwear.  If jail officials did not provide underwear to an indigent prisoner who did not have his own, and the prisoner suffered actual harm, then it might state a claim upon which relief could be granted.  But Burge does not allege that he suffered any actual harm from this policy; indeed, he does not even allege that he was one of the inmates who may have gone without underwear.  Burge may not assert the rights of any other inmates who may have suffered actual harm from this policy because he lacks standing to do so.  *See Elk Grove Unified Sch. Dist. v Newdow*, 542 U.S. 1, 11-12 (2004).

In issue seven of his Statement of Claim, Burge alleges that conditions that Defendants mandate or allow are conducive to the spread of Staph disease.  (Statement of Claim at pp. 21-22.)  He also alleges that inmates with Staph disease do not receive adequate diagnostic tests and treatment.  Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment.  "To state a claim under the Eighth Amendment, [a plaintiff] must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for [his] welfare in the face of serious risks." *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) (citations omitted).  Burge's claim that Defendants did not properly ensure that inmates cleaned their cells and the housing unit, did not enforce personal hygiene requirements on inmates, and did not use certain procedures in the jail laundry does not deprive him of the minimal civilized measure of life's necessities, and he does not allege that he has suffered any actual harm from these conditions.

Burge asserts that the jail does not properly diagnose and treat inmates who have Staph disease.  But he does not allege that he has Staph disease, and as stated above, he may not assert

6

the rights of any other inmate who may have suffered actual harm from this policy because he lacks standing to do so. *See Newdow*, 542 U.S. at 11-12.

For the foregoing reasons, pursuant to 28 U.S.C. § 1915A(b), the Court **DISMISSES** this complaint and **DIRECTS** the Clerk to close this case.

**SO ORDERED**.
ENTERED: December 7, 2007

> s/ Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT